May it please the Court, my name is Wayne Mitchell. I am representing the appellants Gerald Young and Donny Young in this matter. In June 2010, Donny Young and her family drove up to Jackson Visitor's Center at the Mount Rainier National Park. After going into the visitor's center, she and her daughter walked out on the snow field immediately south of the visitor's center, where there were a number of other people walking around. She fell into a hidden, unmarked sinkhole that was created by a National Park Service transformer 150 feet south of the visitor's center. To uphold the dismissal in this case, the Court would be concluding that the Park Service failure to protect visitors from this hidden, but known sinkhole on the grounds of the visitor's center implicates social, economic, or political policy. Well, when you say known now, what is the, I guess I would say, evidence or allegation that it was known to the Park Service? Well, there's two parts to that. Number one, I think we presented sufficient information in our briefs that they had all the information they needed to conclude that there was a sinkhole there, or at least it was likely, in that they knew that it gave off heat. They knew it had cooling fins. They knew it was there, obviously. They had seen other transformers melt snow around them, and they knew that objects under the snow that gave off heat would tend to form sinkholes. That was a known hazard in the park. This is one of those should-have-known cases. Is that what it is? Well, not necessarily, because the district court also cut off our ability to, and it's in the record, there was a motion to stay for the discovery, and we were not permitted to actually depose the workers who actually worked in that area. There was actually testimony that there was a worker who would go out and mark the transformer so that the heavy equipment would not fall onto the transformer. Workers, you mean NPS workers? Park service workers, right. So I think that given that we were cut off from actually deposing people who could have testified, yes, we knew that the transformer was there and that there was a sinkhole, or at least the possibility of that, and that's why we're marking it, I think the court has to presume that to the extent that some of our claims require or are that the park service knew about the sinkhole, that that should be accepted for purposes of the appeal. Who put the transformer there? The park service. Okay. So they knew the transformer was there, certainly. Okay, and what else did they know about it? They knew it gave off heat. They knew it had cooling fins. This is all on the record. They knew that objects under the snow that gave off heat could form sinkholes. Actually, in the record, there is pictures from the webcam that is in the visitor center that shows, actually it shows the Chattoosha Mountains, but the transformers in the foreground, and it shows the following year the sinkhole forming and then opening up. And so I think we supplied sufficient evidence that they had all the information they needed to know that there was a problem here and the fact that they just didn't add one and one and get two, that's a should have known. And then the fact that they cut off our discovery before we could actually ask the people who worked in that area and could presumably have said, yeah, we knew it was there, we knew that there was a risk of sinkholes. How big is this transformer? Big as a refrigerator? Big as a pickup truck? It's six feet tall and about the same width. Six feet tall, six feet square? Give or take. Something like that? Yes. Roughly? Roughly, yes. And so why is this not an instance of impermissible judicial second-guessing of an agency decision? Because it's not social, economic, or political policy to protect the public from a known hazard. There's a number of cases that have talked about, well, first of all, the discretionary function exception obviously is all over the map, but the cases talk about a spectrum where you're looking at somebody driving on the one hand and somebody making banking regulations on the other. And if you look at the cases involving government-created hazards where the hazard is a small area, that the remedy for the hazard is relatively small and not very burdensome, those have tended to be not discretionary function exception. I would point at the Summers, which was actually affirmed in Oberson. Oberson is another good case from 2008 where you have a small area where the government has created a hazard because they raised the speed limit of the snowmobile trail without, and then when they found out that there's a hazard here because this hill, that's too fast for it, they didn't do anything. And so those types of problems have found, WISNAT is another one, have been not within the discretionary function exception. I think one of our more recent cases is Turbush. Turbush is actually the same time as Oberson. And so why isn't it more like Turbush? This is the waterfall. Turbush actually involves, well, number one, in Turbush they actually. I'm sorry, that's the rockfall hazard. Right. In Turbush they actually did some things. They closed the area down. They did an inspection. They said, okay, things look okay. Number two, Turbush involved an entire rock climbing area. And it was out in the wild. It wasn't a very small area directly near a visitor center. And in opening up the visitor center and inviting visitors in, the government's acting much more like a private landowner than they are a regulator of national resources, which is what Turbush is. Here they have this rock climbing area. They have issues of access. Are we going to close it down? Do we tell people about this risk that they already know about because they're, you know, the risk of a rock fall in rock climbing is a known risk. And, you know, maybe it's a little enhanced, but, you know, are we going to give warnings about that? That's much different than a very small, discreet hole that nobody going to the visitor center and walking around on the grounds would ever have any idea that they could possibly fall into a hole or into a transformer that's not locked. But as I understand it, what is this transformer is placed like right behind the building? It's 50 feet on the other side of the road. It's 150 feet from the building. And it's in an area where they knew the public went. Well, it's freestanding, but it's not. There are no trails around there, right? No, but it's. No roads around it? It's a snow field. It's the closest snow field to the parking lot for the visitor center. And the park service admitted that they knew people, when they go up there, they want to get on the snow. This is the closest snow they're going to go out on it. And we have pictures from that day with dozens of people walking around that snow field. And it's right by the visitor center. So it's not like they didn't know people were going out here. The snow field is about the same level as the highway or the road and the parking area. Yes. Well, there's no snow on it. Well, what happens is during the winter, they plow the road, and there's a huge wall alongside the road to the south of the road. In the spring, they come along with a snow piston bully. That's some of the equipment they use. And they knock that wall down. Once they knock that wall down, it's a nice gradual slope up onto that snow field. Basically, they're creating an access to the snow field. And as the pictures in the case show, people walk across the road and go up on the snow field because that's the closest snow. It's June. This accident happened in late spring? It happened June 19th. So it's almost summer. But they get enough snow up there. Now, there'd been no snow other than, I think, maybe two inches for 20 days. So it's not like when you looked at the webcam and you saw there's this big snow field, and you know there's a transformer underneath it, it seems, again, you add one and one, and you get two. And they didn't do that here. And we didn't have an opportunity to depose the guys who were out there, would occasionally mark it with little stakes to make sure that the equipment operator didn't fall on it. The district court obviously thought this case was more in line with those cases which applied to discretionary functioning. And the reason the district court thought that is the manner in which they characterized the alleged actions. If you look at the district court's opinion, they say the actions are employees of Park Service had a duty to, and I'm reading from that opinion, duty to... What page are you on? This is page seven of the order. Okay. Employees, and it's indented, so it's easy. They had a duty to visitors to maintain safe premises in the area of the visitor center. Employees of the Park Service had a duty to warn visitors in the area of the visitor center of known hazards. Employees of the Park Service had a duty to protect visitors in the area of the visitor centers from known hazards. And that's true. That's part of what the complaint said. But the complaint also said, employees of the Park Service were negligent when they failed to protect Donnie Young from falling into the sinkhole caused by the transformer. Now, the case law says you're supposed to look at act by act the specific facts, but the judge basically just took a 90,000-foot view. They're complaining about the way that they're warning of hazards. Well, if you're just saying we're suing the Park Service because we're complaining of the way they warned the visitors about hazards in the area of the visitor center, that's going to be, it's a foregoing conclusion what result you're going to get. That's a policy issue. What we're talking about is how they failed to protect visitors from this discrete known issue. And there's a number of cases that have talked about when you have a discrete known hazard. And what's your best one? I think Oberson is the best one from the Ninth Circuit. I think Sestanero from the Third Circuit is very good. I think Duke, which I think is the Eighth Circuit, is also on point. There's a case called Wright from the District of New York that says you can't take the fact that the government says, well, there's a variety of things we had to do in deciding what we do is a policy decision. You can't use that to say when the government doesn't do anything that it's a policy issue. You know, that's two different issues. Does the government need to do something is one issue. Once the government decides we better do something, how they do it is another issue. I mean, this decision essentially would mean, and in fact the Park Service said, it's discretionary whether or not Park employees clean up a spill in the visitor center. That would be discretionary with the Park Superintendent. That's what the rules say. And if you say it's a danger in the park, it's discretionary with the Superintendent, whether it gets cleaned up, hey, discretionary function exception. So if somebody falls on a spill in the visitor center, hey, that's socioeconomic and political policy. This isn't far removed from that. Do you want to reserve time? I would like to reserve time. Thank you. Thank you. May it please the Court, my name is Priscilla Chan representing the United States. This case is about how the Park Service discovers and eliminates hazards at the park while preserving its beauty and allowing access for the public to enjoy the park, knowing that they may be exposed to potential hazards. First of all, do you agree that the Park Service knew about this hazard? Your Honor, no. The Park Service actually did not. This was an unknown hazard. Several Park Service employees, including the Superintendent, everyone who testified in four depositions testified that this was the first known incident of anyone falling through snow caused by a quake. Didn't the Park Service put this there? The Park Service put the transformer there, Your Honor, and that's important. The Park Service put the transformer. We knew that the transformer would give off heat. There were cooling fins. But it was not known how the transformer would have interacted by the snow. In the absence of snow. Weren't there poles put up in the wintertime to warn the plows so that they wouldn't go over this hole and fall in it? No, Your Honor. The poles were put in place at that time, and it's undisputed that the poles were put in place to protect the snow plows from hitting the transformer. It's a very different situation when you have an ice crust forming over a transformer and whether or not you could foresee that someone would actually walk over it and fall in. That's a very specific, different hazard. Wasn't there experience with another transformer? No, Your Honor. Actually, we know that transformers react to snow, but we also know that sometimes... You know they give off heat, right? We do, actually. But, Your Honor, there are actually 100 transformers located throughout the park, some of which react to snow, some of which don't. So this particular hazard, Your Honor, this particular hole was unknown at the time. That close to the visitor center was unknown? Correct, Your Honor. If I could step back a little bit and put this into context in relation to the park and the dimensions of the park. 50 feet at here might be different than 50 feet at a park the size of Paradise, and in particular the types of topography that are inherent in that location. How far was it from the visitor center? It was 50 feet on the other side of a road from the visitor center, but it was also 50 feet from the wilderness line. And so you did have most times of the year you would have to cross over an embankment to even get there. There is testimony in the record that that was, even though there were people there accessing that particular area, that's not an area that was usually located. Your Honor, you have a question? Well, I'm just trying to figure out how this decision is related to access or to preservation or policy matters. Right, and I think the known, and if I could say for the moment, the difference between a known hazard and an unknown hazard, it has bearing in the discretionary function analysis only so far as to whether or not the Park Service's discretion in discovering and eliminating hazards was policy driven. And in this case, Your Honor, we still dispute that this hazard was known. And does your case rise and fall on that? No, it does not. Actually, in both cases, can I answer how? If it's an unknown hazard, Your Honor, then the discretionary decision is the manner in which the Park Service discovers and eliminates hazards. And in that situation, the plaintiffs never clearly articulate this, but then they would dispute how the Park Service discovers and eliminates hazards. And in this situation, the Park Service could have done one of two things. It could have developed and implemented a plan of investigating the entire park to discover known or unknown hazards. Or it could do what it did in this case, which was to prioritize the known hazards over the unknown hazards. Did the district court make any finding or reach a conclusion as to whether the Park Service knew or should have known about the existence of this hazard? Your Honor, the district court actually said that it's irrelevant whether or not the Park Service should have known or didn't know because the should have known aspect goes to negligence, which is not a factor and irrelevant to the determination of discretionary function exception. The discretionary function exception goes to the nature of the conduct, Your Honor, the process it takes whether to discover known or unknown hazards rather than the subjective intent of the actor. In this case, it really isn't relevant what the Park Service knew or didn't knew. It's the nature of the conduct and whether that is protected. But the conduct, well, what seems to me what conduct is required is, at least in part, based upon what the Park knew or should have known. In other words, part of the conduct is, well, do you ever make any inspections? Right. Well, inspections, Your Honor, is a determination of design which has been held to be policy protected. If that's the conduct, then they're entirely immediate. But what I'm saying is conduct makes a difference and knowledge makes a difference. Well, assuming, let's say, on the other side, if it was a known hazard. That's what happens then. Exactly. If it was a known hazard, there are at least seven policy-driven decisions that were at issue in this case. And there probably was more. But, for example, the management of snow in one of the snowiest places on earth. Paradise receives 50 to 75 feet of snow each year. All of these decisions would have competed with the park's mission of balancing preservation, access, safety, and resources, whether, when, and how to remove snow from areas near the Jackson Visitor Center, whether to routinely inspect the land for latent or undiscovered hazards. I'm sorry. How does it relate to preservation? I don't get that. Right. So the idea of preservation goes to beauty and to how people experience the park. And in this particular instance... So hide an ugly transformer, let it be hidden by snow? Well, actually... That might pose a danger? What the park service would have had to balance in that instance, Your Honor, would be perhaps to remove all the snow from every area so that nothing is undiscovered. But that's not possible. If you stake it, for example, in this case, what signs, poles, or fences or other barriers would best educate, deter, or prevent the public from accessing places? We have testimony that they tried to stake it. So because there's so much snow, when it's snow, just, you know, you walk through the park at your own risk. Well, I think... Because there's so much snow, because you want to preserve the beauty of the snow, even in these known areas. Well, you have to weigh certain factors, Your Honor. And when there are many undiscovered hazards at the park, and the Valdez case says that there are many undiscovered hazards and unknown hazards, and the way in which the park service discovers those is susceptible to policy considerations. And your question goes to whether or not... This is known. Right. If this is known, then they would have had to balance how you manage all the snow. And if they knew that this particular hazard was there, then they would have to balance that hazard against any other hazard of competing interest. Maybe there's a greater hazard there. Was there? There could have been. What about all of the other transformers in the park? Would they have had to stake every single one? I'm curious about them right now, because, I mean, this was a pretty deep fall, and pretty severe injury. Right. It doesn't guide us, but it's just a really precarious situation there when you have that many tourists walking around, and this is deemed as a known hazard. Right. And I would say my best answer to that, Your Honor, is to say that the park service has submitted evidence that it did have to balance all of those factors to compete against temporary hazards. This particular one came and went with the seasons. What about permanent hazards like tree wells? And, you know, when snow falls from the top of the Jackson Visitor Center, all of those things, how to prioritize the elimination of those. And we might second-guess how the park service might handle this particular hazard over another hazard. But, again, that would be substituting our opinion for the opinion of the park service, and that's negligence. How is this different from Summers v. United States or Sutton v. Earls? Right. And if I could, Your Honor, I think that's the – in all of those cases that the plaintiff cited. Let's talk about Summers. That's the beach, the – Right, the hot coals. Rodeo Beach. Yes, the hot coals. Hot coals case. Well – There's hot coals on the beach. Correct. And the failure to warn the visitors at Rodeo Beach of the hazards of stepping on hot coals at the fire pits, Right. was deemed to be not protected by the discretionary function. Well, the Golden Gate National Recreation Area had a manual that required safety inspectors to eliminate unsafe conditions posing an imminent risk of harm. And there was a park-wide sign committee that decided the working size, coloring, and placement of every sign. So the corrective action in that case is mandated as soon as a hazard is identified as posing a risk, a serious injury to the public. More importantly, Your Honor, in that case, there were no other countervailing – there was a mandatory policy, and there was no countervailing policy interests that would have required balancing for the National Recreation Area. In this situation, it's different, Your Honor. Because we have so much snow, managing it, what signs, poles, how to educate the public, you know, too many signs will create sign pollution. People will become desensitized to every single structure, every single potential hazard that happens on the park. Do you have a question? Well, because there's so many transformers like this on the park that that would have been just, you know, too – Well, it's not just transformers that the Park Service is concerned with. It's with every other hazard that could be there. How about Sutton v. Earls, the failure to post the speed limit signs after it placed buoys in navigable waterways that was deemed not protected? Right. And in that particular case, Your Honor, it was a decision – it was more akin to a public highway, especially it was known that it was a commuter location. It was basically the implementation of a speed limit. And that's more of a – what we call more of a garden variety decision that is not susceptible to policy weighing. And I guess it's like, you know, Mr. Mitchell said, it is a spectrum of garden variety decisions that are not susceptible to any competing policy interests to the more high-level decisions that are. And, Your Honor, if I could, the Park Service's decisions here were not garden variety. In terms of a garden variety, it would be like you said, setting a proper speed limit. It is either you do it completely, you can do it right, or you don't. Maintaining a highway, replacing signs. I think the best case that I can compare, just replacing signs doesn't require any competing policy interest. Now, in contrast, the Park Service's actions with regard to management, removal of snow, inspections for hazards, prioritizing those, how to educate the public, how to eliminate hazards, those were all high-level policy-driven decisions that are more analogous to the Childers case, which spoke to how to best warn the public of dangers located in an established trail at Yellowstone. That required the Park Service to balance visitor safety, access, conservation. Turbush is probably a really good, one of the best cases for us, Your Honor. And that was a latent rockfall that was created by the Park Service. And it was posed by a natural exfoliation of Glacier Point Apron by the Wastewater Management System. And in that particular case, Your Honor, the court said the entire process of determining and discovering hazards was protected, just as it was in this case, our decision to prioritize known versus unknown hazards. Valdez, the hiker, fell down a waterfall at Kings Canyon National Park. The policy decisions there were how best to warn of hazards at the waterfall, whether and how signs will effectively educate the public, how to address both known and unknown hazards, and which hazards require an explicit warning and which hazards speak for themselves. So that's the spectrum we're talking about, Your Honor. And I would argue that the decisions inherent in this particular case fell on the other side, that involved high-level policy-driven decisions. I see my time is almost up, Your Honor. If there are no more questions. Let me ask one question. You know, the complaint alleges that the U.S. knew or should have known about the problem with the transformer. Now, I guess your position is that only half of that allegation, if we accept it, is sufficient to survive a motion to dismiss. In other words, if the U.S. knew, it's one thing, but if it only should have known, it's a different case, right? No, I think we survive on both, because if we didn't know, then it is not the subjective intent of the actor. If we didn't know about this, then the policy— You know, close to the visitor center, you don't think the duty that arises is different than if it's an unknown hazard? Well, I think the question would be different, Your Honor. And the question really in that situation is, you know, it's more of a negligence standard. It's what we should have known, and the implication there is that if it was closer, the closer it is to a place where people travel, then we have a greater duty. But those are negligence-based questions, and they have no bearing on a discretionary function analysis. It's the nature of the conduct. So in this situation, wherever the transformer might be, the question is, were there any competing policy interests which were involved in the Park Service's decision— All right, and your position is, on that question, it makes no difference whether the Park Service knew or didn't know about the hazard. Correct, because each decision would implicate policy-driven interests. They were subject to policy analysis. Thank you, Your Honor. We ask that the Court affirm the District Court's decision. Just real quick, won't you always have a competing policy? Won't you always state that you have a competing policy decision? That's a good question. Not all the time, Your Honor. Give me an example when you would. Well, so as a principle, the discretionary function exception is broadly applied but fact-specific. So it would really have to depend on the specific situation. For example, filling a pothole or, like we said, replacing a sign. If it was specific to that thing, even if it was a sign that the Park Service or the agency didn't know about, if it was specifically that and there are no competing policy interests, that would go more towards the garden variety. But the best case that I can say that illustrates where it doesn't, where it kind of flips over to the other side, is the Bailey case, where there was a decision, there was a—I don't know if you'd call it a directive, but to replace signs as soon as possible, but only when it's safe to do so. So they knew, the Army Corps knew that they needed to replace a sign over a raging river. But the court said that that decision on when to do it was protected because it was only when safe to do so. They knew that it was done, but they had to go at a time where it was safe for people to travel that road. So that was subject to discretionary function. So that's a pretty good illustration of where it flips over to the other side. Thank you. Thank you. Your Honor, I think that it's pretty clear that the Park Service position is that they basically don't have to do anything. Everything is discretionary because they can always come up with these 90,000-foot policy issues. Management of the snow. Well, it didn't involve management of the snow if they just wanted to make a warning. They don't have to do anything at all. Preservation of what? Your Honor correctly pointed that out. It's not preservation of a view when you've already decided you're going to put a transformer there. Obviously, the pristine nature of the view is not that important if there's a transformer sitting there. The issue of access. Well, you know, in Turbush and Childers, you're talking about large areas, popular recreation areas. Here we're talking about an 8- or 10-foot square area. There's no policy that says the public has to be let into every square foot of the park no matter how dangerous. One thing I think that's important on the should-have-known issue is there's a number of cases that have said that scientific or professional judgment, particularly dealing with safety, is not typically a policy issue. And so professional judgment is I know this fact, I know this fact, I know that fact. Does that create a hazard? That's a professional judgment. That's not a policy issue. And so both in Wisnant and Myers, the court said a professional or scientific judgment dealing with safety, that's not a policy issue. What about Ms. Chen's argument that, well, they get to prioritize? I mean, there's all kinds of hazards there, and there's so much snow, and I guess so many transformers and other hazards that they have to prioritize. But they've never come up with any priority of what actually would have been more important than this. In fact, as soon as somebody got hurt, they did do something about it. There's no reason why the Park Service couldn't warn the public. Warning the public about this hazard doesn't mean they can't warn them about other things. This is one discrete hazard. It's not the entire park, like Childers, where they were talking about unmaintained trails. It's one discrete hazard. So to say that, oh, we have to prioritize, so we've got to decide whether we're going to warn against this death pit, 150 feet from the visitor center, or we're going to have to put up signs that say don't bring your dogs on the snow. You know, we've got to prioritize. Well, it doesn't really, you know, this is an objective safety hazard they knew or should have known about. And, you know, there's case law, and I think it's SRP versus the U.S. says that that's not the government has a duty there to protect the public. It's not a policy issue. It's not social policy. It's not economic policy. It's just this is a hazard. You've got to do something about it. Thank you, Your Honor. Thank you. Thank you both for your arguments. Very helpful. The matter of Young v. United States of America is now submitted.
judges: ALARCON, TASHIMA, MURGUIA